STATE OF NEBRASKA, APPELLEE, V. WESLEY MASSEY, APPELLANT.
562 N.W.2d 542

Filed May 2, 1997.   No. S-96-912.

Michael F. Maloney for appellant.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and McCORMACK, JJ.

WRIGHT, J.

Wesley Massey appeals the district court's denial of his amended motion to vacate judgment and sentence, seeking postconviction relief from his 1983 convictions for felony murder and kidnapping. Massey was charged in two separate informations with felony murder and kidnapping. The matters were

consolidated for trial, and on May 6, 1983, a jury returned guilty verdicts on both counts. Massey was subsequently sentenced to life imprisonment for the murder and a concurrent term of 50 years' imprisonment for the kidnapping. On direct appeal, we affirmed the convictions and sentences. See *State v. Massey*, 218 Neb. 492, 357 N.W.2d 181 (1984). Massey timely perfected this appeal from the denial of his request for postconviction relief.

## SCOPE OF REVIEW

A defendant moving for postconviction relief must allege facts which, if proved, constitute a denial or violation of his or her rights under the Nebraska or U.S. Constitution. *State v. Parmar*, 249 Neb. 462, 544 N.W.2d 102 (1996).

To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Schoonmaker*, 249 Neb. 330, 543 N.W.2d 194 (1996).

## FACTS

At some point prior to the commission of the crimes involved in the instant case, Massey escaped from the Colorado State Penitentiary, where he was serving a sentence of life imprisonment plus 40 years. On the evening of May 23, 1977, Massey and Mary Larson were staying at the Ramada Inn located near 71st and Grover Streets in Omaha, Nebraska. Larson testified at trial that on the evening in question, she and Massey were short of cash. They devised a plan whereby Larson would make contact with a customer of the hotel and lure the customer into one of the rooms, where Massey would rob the customer.

Gary Damron was in the hotel lounge that evening. Larson approached him, and they shared a few drinks. When Damron left the lounge for a brief period, Larson met Massey in the hall and told him that she had found someone. Thereafter, Larson

and Damron went to the room where Larson and Massey were staying. Once Larson and Damron were in the room, Massey hit Damron over the head with a liquor bottle, which stunned Damron. Massey then pulled out a revolver and demanded money. When Damron resisted, Massey struck him in the head with the gun and Damron lost consciousness. Massey then took a $5 bill from Damron's pocket and a bracelet from his wrist.

When Damron regained consciousness, he was bleeding profusely. Massey ordered Damron to take off his clothes. Damron then took off his suit jacket, vest, and shoes. These items of clothing were recovered from the scene by police and identified by Larson at trial.

Larson stated that after Damron had removed his clothing, he insisted that he did not have any more money. As a result, a fight broke out between Massey and Damron. The struggle continued into the hallway, while Larson remained in the room. Larson stated that when Massey returned, he told her to get their belongings together. Massey remained in the room for a few minutes, complaining about the amount of blood on his clothing, and then left the room. As Larson left the room, she saw Massey and Damron struggling again in front of the elevator.

Keith Bjerk, a business acquaintance of Damron's, testified that he saw Damron stumble out of the elevator "looking like somebody had poured a can of red paint on his head." Damron shouted, " 'Help me, Keith. This guy's trying to kill me.' " Damron attempted to get away from Massey, but was unsuccessful. Bjerk approached Massey, touched his shoulder, and said, " 'Come on, man, this guy's had enough.' " Massey then hit Damron again, stuck the gun into Damron's side, and shot him. Bjerk fled into the hotel lounge, and as he went back into the lobby, he saw Massey leave the hotel. At trial, Bjerk identified Massey as the man who shot Damron.

Massey was not located for 1 or 2 days following the murder. At some point during that time, Massey convinced Richard Gilliam to give him a ride to where Massey's car was supposedly stalled. As the two were driving, however, Massey pulled a gun out from under his sweatshirt and forced Gilliam to drive him out of the state. Gilliam testified that Massey told him that he had shot the man at the Ramada Inn and told Gilliam the

details of what happened once Larson lured Damron into the room. Gilliam testified that Massey told him that once Damron bolted from the room, Massey chased him down the hall and into the elevator. When Massey saw people in the lobby, he figured he would get caught, so he shot Damron.

The pathologist who performed the autopsy testified that the primary cause of Damron's death was a gunshot wound to his chest. This type of wound was produced by a gun placed directly against the body before firing.

At trial, Massey admitted that he robbed and shot Damron. He also testified that he had previous convictions for several felonies. During direct examination by his counsel, Massey stated that he was currently serving a life sentence plus 40 years in the Colorado State Penitentiary.

A jury found Massey guilty of felony murder and kidnapping. He was sentenced to life imprisonment and a concurrent term of 50 years' imprisonment. On direct appeal, we upheld the convictions and sentences. Massey did not assign as error on direct appeal the conviction for kidnapping, and it is not addressed by Massey in his request for postconviction relief.

## ASSIGNMENTS OF ERROR

Massey assigns two errors to the district court: (1) the court's finding that Massey's trial counsel was not ineffective for eliciting testimony prejudicial to Massey and (2) the court's finding that Massey's appellate counsel was not ineffective for failing to assign trial counsel's ineffectiveness as an error in Massey's direct appeal to this court.

## ANALYSIS

In his first assignment of error, Massey alleges that his trial counsel's performance was deficient because during the course of Massey's direct examination, trial counsel elicited testimony from Massey that he had been convicted of four or five previous felonies and that he was currently serving a sentence of life plus 40 years in the Colorado State Penitentiary. Massey argues that a lawyer with ordinary training and skill in criminal law would not have elicited such prejudicial testimony from his own client, especially since the State would not have been permitted to elicit the same or similar testimony.

Massey contends that this testimony caused the jury to be less likely to believe him after hearing that he had been convicted of four or five felonies and was currently serving a sentence of life plus 40 years in Colorado. At trial, Massey's defense was that he committed two separate and unrelated offenses: robbery and manslaughter, not felony murder. Massey argues that in order for him to prevail at trial, the jury had to believe that Massey did not pursue Damron after he fled the hotel room and that Massey intended to leave the hotel room as soon as possible. Massey claims that the robbery was over once Damron left the hotel room and that the second altercation between Massey and Damron was a separate and distinct incident. Massey claims that his credibility was destroyed by trial counsel's deficient performance and that but for his counsel's deficient performance, the jury would have given greater weight to his testimony. Massey argues that if his testimony had been given its proper weight, there was a reasonable probability that the jury would have acquitted him of the felony murder charge.

To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution and thereby obtain reversal of a defendant's conviction, the defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Schoonmaker*, 249 Neb. 330, 543 N.W.2d 194 (1996).

We first address whether there is a reasonable probability that but for trial counsel's deficient performance, the result of the proceeding would have been different. When Massey committed robbery against Damron, the crime of robbery was defined as follows: "Whoever forcibly, and by violence, or by putting in fear, takes from the person of another any money or personal property, of any value whatever, with the intent to rob or steal, shall be deemed guilty of robbery . . . ." See Neb. Rev. Stat. § 28-414 (Reissue 1975).

Massey admitted to the robbery and killing of Damron. His theory at trial was that the robbery had been completed before

the murder occurred. Massey now argues that because the robbery and the murder occurred in two separate episodes, he should not have been convicted of felony murder. We disagree.

In *State v. Bell*, 194 Neb. 554, 233 N.W.2d 920 (1975), Bell entered a gas station, and while the attendant was opening a garage bay more than 50 feet away, he picked up the station's cash register, put it in a companion's car, and then got into the car. The attendant saw Bell leaving with the cash register and pursued him, but did not catch Bell until after he and the cash register were already in the car. The attendant tried to get the cash register back by leaning into the car window, and he was struck and pushed by Bell.

On appeal, we considered when the taking of the cash register ended for purposes of determining whether Bell had used force in order to take the cash register. We noted that although Bell had already removed the cash register from the station, the robbery was not yet complete because an escape with the stolen property was an integral part of the robbery. We cited *People v. Anderson*, 64 Cal. 2d 633, 414 P.2d 366, 51 Cal. Rptr. 238 (1966), with approval:

> "In this state, it is settled that a robbery is not completed at the moment the robber obtains possession of the stolen property and that the crime of robbery includes the element of asportation, the robber's escape with the loot being considered as important in the commission of the crime as gaining possession of the property. . . .
>
> "Accordingly, if one who has stolen property from the person of another uses force or fear in removing, or attempting to remove, the property from the owner's immediate presence, as defendant did here, the crime of robbery has been committed."

*Bell*, 194 Neb. at 556, 233 N.W.2d at 922.

In the case at bar, the robbery was still in progress while Massey was struggling with Damron in the hallway and on the elevator. We note that Damron yelled to Bjerk that Massey was trying to kill him. Gilliam testified that Massey told him that Massey had chased Damron into the elevator and subsequently shot him. At this point, Massey had not yet escaped, and the robbery was ongoing.

A reasonable inference regarding what occurred in the elevator is that Massey was attempting to escape from the hotel with Damron's property during the struggle. A jury could certainly find beyond a reasonable doubt that Massey killed Damron in an attempt to escape with Damron's property and that Massey was attempting to escape while in possession of Damron's property when he shot Damron.

Thus, because Massey's distinction between the robbery and the murder of Damron is unsuccessful, Massey cannot demonstrate a reasonable probability that but for counsel's deficient performance in soliciting Massey's testimony about the sentence he was serving in Colorado, the result of the proceeding would have been different. See *State v. Schoonmaker*, 249 Neb. 330, 543 N.W.2d 194 (1996). Massey's killing of Damron was committed during the ongoing commission of a robbery. Even if the information regarding Massey's Colorado sentence had not been solicited, Massey has not shown a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. Thus, Massey's first assignment of error is without merit.

In his second assignment of error, Massey argues that his appellate counsel was ineffective for failing to raise the issue discussed in his first assignment of error during his direct appeal. On direct appeal, Massey's appellate counsel assigned two errors: the improper admission into evidence of the revolver allegedly used in the killing and the court's failure to give lesser-included offense instructions for second degree murder or manslaughter. Appellate counsel did not allege that trial counsel was ineffective in eliciting testimony from Massey that he was then serving a sentence of life plus 40 years in the Colorado State Penitentiary.

For the reasons stated above, Massey's allegation that his trial counsel was ineffective is without merit. Thus, even if Massey's appellate counsel had raised this issue on direct appeal, there is no reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different.

## CONCLUSION

A criminal defendant seeking postconviction relief has the burden of establishing a basis for such relief, and the findings

of the district court will not be disturbed unless clearly erroneous. *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995). Massey has not established a basis for postconviction relief. Therefore, we affirm the judgment of the district court which denied Massey's amended motion to vacate the judgment and sentence.

AFFIRMED.