STATE OF NEBRASKA, APPELLEE, V. ROBERT E. HUNT, APPELLANT.
580 N.W.2d 110

Filed June 26, 1998.   No. S-97-1142.

Harry A. Moore, Madison County Public Defender, for appellant.

Don Stenberg, Attorney General, and David T. Bydalek for appellee.

WHITE, C.J., CAPORALE, WRIGHT, CONNOLLY, GERRARD, STEPHAN, and MCCORMACK, JJ.

WHITE, C.J.

Robert E. Hunt appeals from the Madison County District Court's dismissal of his petition for postconviction relief. We removed this case to our docket pursuant to our authority to regulate the caseloads of the Nebraska Court of Appeals and this court, and we affirm. See Neb. Rev. Stat. § 24-1106(3) (Reissue 1995).

On August 10, 1984, appellant was convicted of first degree murder for the killing of Beverly Ramspott. On August 9, 1985, we vacated appellant's death sentence in *State v. Hunt*, 220 Neb. 707, 371 N.W.2d 708 (1985). On October 11, 1985, appellant was resentenced to life in prison. In *Hunt, supra*, we set forth the facts which led to appellant's conviction, and they shall be repeated herein only as necessary for the resolution of the issues before this court.

On April 12, 1984, four officers from the Norfolk Police Department were dispatched to appellant's home after having been advised that a woman had called to inform the police that her husband thought he had killed someone. After the officers

arrived, appellant told Officer Douglas Dekker, " 'I killed her.' " *Id.* at 709, 371 N.W.2d at 712. In addition, appellant gave the police a cassette case which contained, among other pieces of incriminating evidence, a pair of glasses belonging to the victim. Appellant also told the officer the victim's address, the location of the victim's body, and that he had sexually assaulted the victim after she was dead. The officers confirmed the address and location of the body, and appellant was then taken into custody by the Norfolk Police Department.

Once he was in police custody, appellant was interrogated on two occasions by Officer Leon Chapman. After appellant was advised of his *Miranda* rights, he informed Officer Chapman that on prior occasions, he had told his wife that he had an urge to kill a woman and have sex with her after she was dead. Appellant then confessed to the crime and gave Officer Chapman a detailed account of the events that occurred the previous evening. Officer Chapman then asked appellant to give a written or tape-recorded statement. Appellant was not willing to do this without the presence of an attorney. Due to possible constitutional problems, the State did not offer any of the evidence adduced during the second interrogation.

Prior to appellant's trial, his appointed trial counsel, Thomas DeLay, moved to suppress all statements appellant made after being placed in the custody of the Norfolk Police Department. In addition, DeLay also moved that all the evidence concerning communications between Hunt and his wife be suppressed and that the State be precluded from eliciting any evidence which in any manner referred to such communications. The trial court overruled these motions.

Once the trial progressed to closing arguments, DeLay commenced his summation with the following comments:

> May it please the Court, ladies and gentlemen of the jury: This is a tough case. This is tough. We have got a beautiful young girl who is dead. We have a defendant, Robert Hunt, who killed her. He murdered Beverly Ramspott on April 12, 1984, and he did so in Madison County. Those are some of the elements of both first and second degree murder. He is a creepy, slimy, sexual degenerate. I don't think there is anyone in the courtroom who

could call him anything else. He took the life of a beautiful young girl who died during the administration of events for his own sexual gratification. He's a creep. If you put ooze on the door, he would ooze into the door.

DeLay then conceded appellant's guilt as to second degree murder and focused on attacking the premeditation element of the prosecution's case for first degree murder.

On August 8, 1997, appellant filed an amended petition for postconviction relief in Madison County District Court. Appellant's petition asserted that he was denied due process, a fair trial, and effective assistance of counsel due to the derogatory comments and concessions made by DeLay during closing arguments. On September 30 and October 1, the district court held a hearing on appellant's amended petition, and both appellant and DeLay were called to testify.

The examination of DeLay focused on his closing arguments and his trial strategy. DeLay, by his own account, styled the beginning of his closing argument in this manner in an attempt to gain credibility with the jury. The comments were also intended to shock the jury into understanding that the premeditation element of the prosecution's case rested on sympathy and emotion rather than actual proof.

As for his trial strategy, DeLay testified that his defense options were limited and that his only course of action was to attempt to limit the evidence against appellant because of appellant's several confessions. In addition, DeLay opined that appellant's only viable defense in order to avoid the death penalty was to argue that appellant was guilty of second degree murder. DeLay and appellant discussed this strategy on multiple occasions.

During the hearing, appellant testified that he told DeLay he wished to plead not guilty by reason of insanity. However, appellant was examined by at least two defense experts and found to be legally sane. Appellant further testified that DeLay told him that an insanity plea would not hold' up in court because appellant's subjective beliefs would be trumped by experts for both appellant and the State. Therefore, if appellant chose to follow such a course of action, DeLay would file an insanity plea on appellant's behalf and then withdraw from the

case. Appellant further testified that he discussed and approved DeLay's trial strategy of focusing on avoiding the death penalty by arguing that appellant was guilty of only second degree murder.

Summarized and restated, appellant asserts in his assignments of error that the district court erred in (1) requiring appellant to demonstrate prejudice, in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), rather than presuming prejudice, in accordance with *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984), and (2) failing to find that appellant was denied due process, a fair trial, or effective assistance of counsel and that his rights under the 6th and 14th Amendments to the U.S. Constitution were violated with regard to DeLay's comments during closing arguments.

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Fletcher*, 253 Neb. 1029, 573 N.W.2d 752 (1998); *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997).

In order to sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and article I, § 11, of the Nebraska Constitution, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defendant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *Strickland v. Washington, supra*; *State v. Boppre, supra.* However, in *State v. Nielsen*, 243 Neb. 202, 498 N.W.2d 527 (1993), we recognized that although counsel is presumed to be competent, there are three instances which are so inherently prejudicial to an accused that ineffective assistance of counsel is presumed. One instance is the failure of counsel to subject the prosecution's case to meaningful adversarial testing. *Id.* Accord *United States v. Cronic, supra.*

Appellant asserts that the district court erred by failing to presume prejudice because DeLay's derogatory comments and concessions to those elements common to both first and second degree murder constituted a failure to subject the prosecution's

case to meaningful adversarial testing. This assertion is without merit.

The U.S. Supreme Court, when considering those instances when prejudice should be presumed, noted that apart from circumstances which reach the level of being denied the right of effective cross-examination, an incurable constitutional error, there is generally no basis for finding a Sixth Amendment violation unless the accused can demonstrate specific errors which undermined the reliability of the finding of guilt. *Id.* Those courts which have considered derogatory comments made by defense counsel during closing arguments have not chosen to presume prejudice. See, *Burris v. Farley*, 51 F.3d 655, 662 (7th Cir. 1995), *cert. denied* 516 U.S. 922, 116 S. Ct. 319, 133 L. Ed. 2d 221 (applying *Strickland* test although defense counsel referred to defendant as " 'street person' " and said " '[h]e's not the best, best one I've ever had . . . . I don't even like him' "); *Douglas v. State*, 663 N.E.2d 1153, 1155 (Ind. 1996) (applying *Strickland* test although defense counsel stated during closing arguments that killing was " 'senseless,' " that defendant " 'was either the craziest person on earth or one of society's most dangerous persons,'" and that " 'all black people are not like that,' " and were " 'not savages' " or " 'animals' "). In addition, courts generally do not apply *Cronic* in ineffective assistance of counsel proceedings where defense counsel conceded elements to certain crimes in an effort to convince the jury to convict the defendant of a lesser-included offense. See, *McNeal v. Wainwright*, 722 F.2d 674 (11th Cir. 1984) (applying *Strickland* and holding argument by defense counsel suggesting guilt on charge of manslaughter rather than first degree murder was tactical decision); *Faraga v. State*, 514 So. 2d 295 (Miss. 1987), *cert. denied* 487 U.S. 1210, 108 S. Ct. 2858, 101 L. Ed. 2d 894 (1988) (applying *Strickland* and holding trial counsel's concession of defendant's guilt of murder, but not capital murder, during closing arguments in face of overwhelming proof was tactical decision).

The record of the postconviction relief hearing discloses that DeLay did not sacrifice the adversarial nature of the proceedings leading up to appellant's conviction. Specifically, exhibit 102 reveals that DeLay discussed with appellant (1) the exten-

sive evidence pointing to his guilt, especially appellant's numerous confessions; (2) a strategy of limiting the evidence against appellant through various motions to suppress; (3) a trial strategy of arguing that the State lacked evidence of premeditation in order to avoid the death penalty through a second degree murder conviction; and (4) an inability to bring an insanity defense because appellant had already been found legally sane by at least two defense experts. After discussing this strategy with appellant, DeLay focused on securing a second degree murder conviction to avoid the death penalty. DeLay initiated this strategy by moving to suppress incriminating statements appellant made to his wife and to the police. In addition, the record reveals that DeLay followed this strategy from opening statements to closing arguments.

The district court did not err in refusing to presume prejudice on the ground that DeLay's comments and concessions equaled a failure to subject the prosecution's case to meaningful adversarial testing as set forth in *United States v. Cronic*, 466 U.S. 648, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984). DeLay's comments and concessions are not severe enough to destroy the adversarial nature of the proceedings below and do not rise to the magnitude of the limited circumstances set forth by the Court in *Cronic, supra*. Consequently, we shall analyze DeLay's conduct in accordance with *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), and *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997).

As stated above, appellant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced appellant, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Boppre, supra*. These two prongs may be addressed in either order. *Id*. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be taken. *Id*. The appellant in a postconviction proceeding has the burden of alleging and proving prejudice or, in other words, in light of all the evidence before the jury, demonstrating that the decision reached would reasonably likely have been different absent the errors. *Id*.

Assuming, arguendo, that DeLay's comments can be considered deficient, these comments, in light of all the evidence before the jury, did not prejudice appellant. Although he could have been more tactful in gaining credibility with the jury and showing that the prosecution's case relied on sympathy, DeLay's comments constituted a tactical decision made in consideration of the State's overwhelming evidence and an attempt to avoid the death penalty by conceding those elements common to both first and second degree murder. Such a course of action does not amount to ineffective assistance of counsel. See, *McNeal v. Wainwright, supra; Faraga v. State, supra.* Even absent these comments, it is not reasonably likely that the result of appellant's trial would have been any different, due to the wealth of incriminating evidence before the jury.

Consequently, the order of the trial court is hereby affirmed.

AFFIRMED.