STATE OF NEBRASKA, APPELLEE, V.
RONALD P. DREIMANIS, APPELLANT.
593 N.W. 2d 750

Filed April 27, 1999.    No. A-98-650.

Tom F. Wilson for appellant.

Don Stenberg, Attorney General, and Martin W. Swanson for appellee.

MUES, INBODY, and CARLSON, Judges.

CARLSON, Judge.

Ronald P. Dreimanis appeals from his conviction, following a jury trial, for first degree sexual assault on a child. For the reasons set forth below, we affirm.

## STATEMENT OF FACTS

On September 9, 1997, Dreimanis was charged with first degree sexual assault on a child for incidents having occurred between March 1, 1995, and August 10, 1997. He entered a not guilty plea on October 22, and the matter was set for trial. On March 3, 1998, the district court held three hearings: a hearing pursuant to Neb. Evid. R. 404, Neb. Rev. Stat. § 27-404 (Reissue 1995), to determine the admissibility of evidence of Dreimanis' prior acts (404 hearing); a hearing to determine admissibility of Dreimanis' prior conviction for a 1987 sexual assault, offered pursuant to Neb. Evid. R. 609, Neb. Rev. Stat. § 27-609 (Reissue 1995), for impeachment of his credibility, pursuant to *State v. Olsan*, 231 Neb. 214, 436 N.W.2d 128 (1989) (*Olsan* hearing); and a hearing to determine the voluntariness of Dreimanis' statements to investigating officers during the investigation of the instant case, as required by *Jackson v. Denno*, 378 U.S. 368, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (*Denno* hearing).

## 404 HEARING

At this phase of the proceedings, the court received into evidence a transcript of the testimony by the 7-year-old victim, whom we will refer to as "Jane." Jane also testified at the hearing. According to Jane, Dreimanis had forced her to touch his penis with her hands and had inserted his penis, covered with peanut butter and jelly, into her mouth and also did the same with her younger brother.

Subsequently, another victim, whom we will refer to as "Mary," testified that in 1987, when she was 9 years old and when Dreimanis was approximately 19 years of age, Dreimanis had kissed, fondled, and digitally penetrated her while Mary's

little sister was in the room. Tim Domgard next testified that in 1987, he had been a detective sergeant with the Lincoln Police Department and, at that time, had investigated Dreimanis' 1987 assault on Mary. According to Domgard, Dreimanis had initially denied the allegations but later stated that he had digitally penetrated Mary after she had kissed him, rubbed his penis, and placed his hands between her legs. The court then admitted, for purposes of the 404 hearing, a report establishing that on April 14, 1988, Dreimanis had pled guilty to sexual assault on Mary and had been adjudged guilty. Finally, Officer Luke Wilke of the Lincoln Police Department testified to his investigation of the pending first degree sexual assault charge involving Jane. He testified that Dreimanis had first denied the allegations. Wilke testified that Dreimanis subsequently claimed that Jane had attempted to get him to put peanut butter and jelly on his penis so that she could lick it off but that he had only put peanut butter on his finger and had Jane lick it off his finger.

### OLSAN HEARING

The court next conducted an *Olsan* hearing to determine whether the State could, pursuant to rule 609, offer evidence of the prior assault for impeachment purposes, should Dreimanis testify. During this hearing, the court received exhibit 3 into evidence, which contains documents relating to the 1987 assault and conviction involving Mary.

### DENNO HEARING

The court then immediately held a *Denno* hearing, at which time Wilke again testified, this time regarding his questioning of Dreimanis during Wilke's investigation of the pending sexual assault case involving Jane. Wilke testified that he had advised Dreimanis of his *Miranda* rights prior to questioning him and that Dreimanis had signed a form verifying his understanding of those rights. Wilke denied using any coercion during that questioning and testified that he stopped questioning Dreimanis once Dreimanis indicated he might want an attorney. A copy of the *Miranda* warning and waiver form, signed by Dreimanis, was entered into evidence.

On March 4, 1998, at the conclusion of all three hearings, the court ruled as follows:

With respect to 404, I have determined that evidence with respect to the acts concerning [Jane]'s brother . . . are admissible, as well as the previous events with [Mary] with respect to the prior conviction. It is admissible for purposes of impeachment should the defendant testify.

And then I do find that the statements the defendant made to Officer Wilke were freely and voluntarily made and those will be admissible as well.

## TRIAL

At trial, Domgard testified, over objection, regarding his investigation of the assault on Mary; Jane testified about being assaulted by Dreimanis; Jane's mother testified about her discovery of the sexual assault; and Wilke testified regarding Dreimanis' statements to the police. At the close of the State's case in chief, the following colloquy occurred:

MS. NELSON: Your Honor, at this time the State has its last piece of evidence which would be a stipulation of facts that is agreed on by the parties and I would ask leave to orally present that stipulation of facts.

. . . .

MS. NELSON: The parties stipulate and agree as follows:

One, that on or about April 14, 1989, the defendant . . . entered a plea of guilty to a criminal charge of sexual assault of a child . . . .

Two, that this charged [sic] pertained to the sexual assault of [Mary] which occurred on September 5, 1987; and

Three, that the court accepted the defendant's . . . plea and found him guilty of that charge.

THE COURT: Is that stipulated to by the defendant, Mr. Hays?

MR. HAYS: Your Honor, I do object to the admissibility of the facts the State proposed to stipulate, under Rule 404, on relevancy. In anticipation of the court's ruling on that, we would, however, stipulate that that is an accurate statement of fact.

THE COURT: Okay. The court does overrule the 404 objection and with that objection preserved, is it so stipulated?

MR. HAYS: Yes. That is a correct recitation of the facts.

MS. NELSON: . . . I may have said the plea was in '89. If I misspoke, the plea was April 14th of 1988.

The matter was submitted to the jury on March 10, 1998. The jury was given instruction No. 12 as follows:

You heard evidence that the defendant 1) sexually assaulted [Mary], 2) sexually assaulted [Jane's brother], and 3) caused [Jane] to rub his penis. Such evidence was not received to prove the character of the defendant in order to show that he acted in conformity therewith. Such evidence was received only for the limited purpose of helping you to decide whether the defendant had the motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake or accident to commit the first degree sexual assault of a child charged. You must consider the evidence for that limited purpose and for no other.

The jury returned a guilty verdict on March 11, 1998. On April 29, Dreimanis was sentenced to a term of 8 to 12 years' imprisonment. Dreimanis perfected his appeal of that conviction on May 22.

## ASSIGNMENTS OF ERROR

Dreimanis makes four assignments of error: (1) The trial court erred in allowing testimony of a prior bad act, (2) the trial court erred in failing to make specific findings in its ruling on the pretrial hearings, (3) the trial court erred in failing to determine whether Dreimanis' confession during his prior act was voluntary, and (4) his trial counsel was ineffective.

## STANDARD OF REVIEW

It is within the discretion of the trial court to determine relevancy and admissibility of evidence of other wrongs or acts, and the trial court's decision will not be reversed absent an abuse of that discretion. *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994), *overruled on other grounds, State v. Freeman*, 253 Neb. 385, 571 N.W.2d 276 (1997).

■ To sustain a claim of ineffective assistance of counsel as a violation of the Sixth Amendment to the U.S. Constitution and thereby obtain reversal of a conviction, a defendant must show that (1) counsel's performance was deficient and (2) such deficient performance prejudiced the defense, that is, demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997).

## ANALYSIS

### PRIOR BAD ACT EVIDENCE

Dreimanis first argues that the trial court erred in admitting testimony regarding his conviction in 1987 for sexual assault of a child, Mary. Rule 404(2) provides:

Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he or she acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident.

■ To determine if there was unfair prejudice in admitting evidence of other crimes under rule 404(2), an appellate court considers (1) whether the evidence was relevant, (2) whether the evidence had a proper purpose, (3) whether the probative value of the evidence outweighed its potential for unfair prejudice, and (4) whether the trial court, if requested, instructed the jury to consider the evidence only for the purpose for which it was admitted. *State v. Yager*, 236 Neb. 481, 461 N.W.2d 741 (1990).

■ Dreimanis first argues that the prior act was without relevance and offered for an improper purpose. The Nebraska Supreme Court has consistently stated that sexual crimes are offenses in which evidence of other similar sexual conduct has independent relevance and that such evidence may be admissible whether that conduct involved the complaining witness or third parties. *State v. Carter, supra*; *State v. Martin*, 242 Neb. 116, 493 N.W.2d 191 (1992); *State v. Stephens*, 237 Neb. 551, 466 N.W.2d 781 (1991); *State v. Craig*, 219 Neb. 70, 361 N.W.2d 206 (1985).

The instant case and the prior case share several common elements, including the fact that both victims were under 10 years of age. In *State v. Carter, supra*, the Supreme Court noted that evidence of repeated incidents may be especially relevant in proving sexual crimes committed against persons otherwise defenseless due to age—either the very young or the elderly. Without proof by other acts of a defendant, except in cases of the fortuitous presence of an eyewitness, those crimes would likely go unpunished. *Id.*

The two cases share other common elements as well. In both cases, Dreimanis was alone in a room with the victim and the victim's younger sibling, and in both cases, the victims were in their own homes. In both cases, Dreimanis obtained access to the children through his relationship with their mothers. In both cases, Dreimanis at first denied the charges but later admitted to some inappropriate contact, alleging that the contact was originated by sexual aggression on the part of the victims.

A prior act need not be identical to the act charged in order to be admissible. It is sufficient that the evidence show similar involvement reasonably related to the charged conduct and be presented in a manner in which prejudice does not outweigh its probative value. *State v. Phelps*, 241 Neb. 707, 490 N.W.2d 676 (1992). Having considered the evidence in light of the above-stated principles, we cannot say that the trial court abused its discretion in determining that evidence of Dreimanis' prior conviction for sexual assault was relevant.

Dreimanis alternatively argues that even if the prior act is deemed to be relevant, it is still inadmissible, because it is unfairly prejudicial. According to Dreimanis, "[T]he prejudice is unfair because of the sexual nature of the acts . . . . It is difficult to believe that a jury would not unfairly prejudge the Defendant when hearing about a prior sexual assault on a child." Brief for appellant at 12.

However, balancing the probative value of the evidence against the danger of unfair prejudice is also within the discretion of the trial court. *State v. Carter*, 246 Neb. 953, 524 N.W.2d 763 (1994). The fact that the evidence is prejudicial is not enough to require exclusion, because most, if not all, of the evidence a party offers is calculated to be prejudicial to the oppos-

ing party. *Id.* It is only the evidence which has a tendency to suggest a decision on an improper basis that is unfairly prejudicial under Neb. Evid. R. 403, Neb. Rev. Stat. § 27-403 (Reissue 1995). *State v. Carter, supra.*

Where, as here, evidence is relevant, the question of whether the evidence was unfairly prejudicial hinges on whether the court properly instructed the jury as to its limited use. *State v. Carter, supra.* The court in this case instructed the jury that the evidence was admitted for purposes other than to show Dreimanis' character and was admitted for purposes other than to show that he acted in conformance with such character. Accordingly, the district court did not err in admitting the prior act evidence. This assignment of error is rejected.

### Specific Findings in Trial Court's 404 Hearing Ruling

Dreimanis next complains that the trial court erred by not making specific findings in its rulings following the 404, *Olsan*, and *Denno* hearings. It seems clear that the trial court's ruling that the prior bad act evidence was admissible, made after a full and extensive hearing on the issue, clearly contains an implicit finding that such evidence was competent for the purposes offered.

Dreimanis nonetheless argues that the trial court was obligated to make express findings, citing *State v. Osborn*, 250 Neb. 57, 547 N.W.2d 139 (1996). However, *Osborn*, 250 Neb. at 67, 547 N.W.2d at 145, expressly addresses only rulings on motions to suppress and makes no mention of rulings on rule 404 matters: "Henceforth, district courts shall articulate in writing or from the bench their general findings when denying or granting *a motion to suppress.*" (Emphasis supplied.) Dreimanis presents no authority extending this requirement beyond motions to suppress, and he offers no compelling reason to impose one. The trial court is under no obligation to make express findings in rulings pursuant to rule 404. This assignment of error is accordingly rejected.

### Whether Confession During Investigation of Prior Act Was Voluntary

Dreimanis next argues that the trial court erred in admitting testimony regarding his statements during the investigation

of the 1987 sexual assault on Mary without first determining whether Dreimanis made those statements voluntarily. As a threshold matter, we note that Dreimanis never raised this issue during pretrial proceedings and never sought a *Denno* hearing on the matter. Moreover, he phrased his objection at trial in the following manner: "At this point I would object to any testimony about the particular investigation and I would ask that that be a continuing objection based on the 404 evidence and objection on *relevancy*." (Emphasis supplied.) That objection was overruled. Neb. Evid. R. 103(1)(a), Neb. Rev. Stat. § 27-103(1)(a) (Reissue 1995), provides that an appellant must make "a timely objection . . . stating the specific ground of objection, if a specific ground was not apparent from the context." Because Dreimanis did not object on the basis of whether his statements in the investigation of the sexual assault on Mary were voluntary, and such issue is not apparent from the context, the matter was not preserved for appellate review. Compare *State v. Schrein*, 244 Neb. 136, 504 N.W.2d 827 (1993) (relevancy objection, properly overruled, does not preserve objection premised on unfair prejudice).

More fundamentally, even had that issue been preserved for appellate review, it is irrelevant to the instant proceedings. The issue before the trial court was whether evidence of Dreimanis' prior sexual assault on Mary was admissible pursuant to rule 404. The trial court properly ruled it was. Whether the statements Dreimanis made during the course of that investigation were voluntary was resolved by his guilty plea in that case. The voluntary entry of a guilty plea or a plea of no contest waives every defense to a charge, whether the defense is procedural, statutory, or constitutional. *State v. Trackwell*, 250 Neb. 46, 547 N.W.2d 471 (1996). Dreimanis cannot now raise an issue he long ago waived. This assignment of error is accordingly rejected.

### ALLEGED INEFFECTIVENESS OF COUNSEL

Dreimanis next alleges that he was provided with ineffective assistance of counsel. He bases this allegation on two factors: his assertion that he had contact with his counsel only at court appearances and his assertion that his counsel should have

objected to the introduction of testimony by Domgard regarding Dreimanis' prior bad act involving Mary.

As noted above, to sustain a claim of ineffective assistance of counsel, the defendant must show both that the performance of his counsel was deficient and that such performance prejudiced the defendant. *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997).

To satisfy the prejudice·prong of the ineffective assistance of counsel test, the defendant must demonstrate a reasonable probability that but for counsel's deficient performance, the result of the proceeding would have been different. *State v. Boppre, supra.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* It is not enough to show that the errors had some conceivable effect on the outcome, because while virtually every act or omission of counsel would meet that test, not every error which conceivably influenced the outcome undermines the reliability of the result of the proceeding. *Id.*

Dreimanis has made no such showing. Even assuming that his contact with his counsel was in fact limited to courtroom appearances, upon which the record is silent, Dreimanis has not shown how those limited contacts prejudiced his defense. Moreover, in his brief, Dreimanis concedes that he did have contacts with an investigator from the Lancaster County public defender's office. Dreimanis has not shown that his counsel's performance would have been significantly better had counsel made more contacts with him or how those limited contacts affected the outcome of the trial.

The issue of his counsel's failure to object to the trial testimony of Domgard, regarding Dreimanis' prior bad act involving Mary, is similarly without demonstrated prejudicial effect. Here, Dreimanis again claims that his counsel should have objected to that testimony on the ground that there had been no showing that his confession in that case had been voluntary. However, as discussed above, the issue of the voluntary or involuntary nature of that confession is irrelevant to the instant proceedings. Accordingly, such an objection, if made, would properly have been overruled. Obviously, Dreimanis was not prejudiced by his counsel's refusal to make a futile objection.

Dreimanis alternatively argues that such an objection was warranted, because the trial court had ruled that such testimony could come in only for impeachment purposes. However, that argument misstates the record. The trial court held three separate pretrial hearings: the 404 hearing on the issue of whether evidence of prior bad acts would be admissible at trial; the *Olsan* hearing on the issue of whether his prior conviction was admissible for impeachment purposes, should Dreimanis opt to testify; and the *Denno* hearing on the issue of determining the voluntariness of Dreimanis' statements in the investigation of the instant case. At the conclusion of all three hearings, the trial court ruled:

> With respect to 404, I have determined that evidence with respect to the acts concerning [Jane]'s brother are admissible, as well as the previous events with [Mary] with respect to the prior conviction. It is admissible for purposes of impeachment should the defendant testify.
>
> And then I do find that the statements the defendant made to Officer Wilke were freely and voluntarily made and those will be admissible as well.

It is clear from the context of the proceedings that the trial court's comment regarding impeachment was directed toward the *Olsan* aspect of the proceedings. It is equally clear that the court had found that evidence of Dreimanis' prior bad acts, including the conviction for the sexual assault on Mary, was admissible for proper rule 404 purposes.

Even if the district court's ruling is interpreted as Dreimanis suggests, it would not change the outcome. Dreimanis argues that the introduction of evidence of his conviction for the sexual assault on Mary, as opposed to and in addition to the underlying facts of that assault, is beyond the scope of permissible rule 404 evidence and is in fact inherently prejudicial.

However, Dreimanis offered no authority in support of his position, and we have found none. Rule 404 itself contains no prohibition against mention of convictions, and evidence of prior convictions, other than or in addition to the underlying bad acts, has been appropriately introduced in other cases. See, e.g., *State v. Methe*, 228 Neb. 468, 422 N.W.2d 803 (1988) (evidence of defendant's prior conviction for intimidation by telephone

call was admissible in second prosecution for intimidation by telephone call). In *State v. Krutilek*, 5 Neb. App. 853, 864, 567 N.W.2d 797, 804-05 (1997), the defendant contended

> the trial court erred in allowing the State to produce evidence of his prior automobile theft convictions.
>
> . . . .
>
> Krutilek's prior convictions were relevant to show, contrary to Krutilek's testimony, that he did not have permission to take Goswick's car, that Goswick did not want him to take the car in order to hide it from her ex-husband, and that she did not eventually just give the car to Krutilek. The prior convictions also had the proper purpose of showing absence of mistake and intent to steal the automobile. . . . Therefore, the trial court did not err in allowing the State to present evidence of Krutilek's two prior automobile theft convictions.

Nebraska's rule 404(2) is identical, in relevant part, to Fed. R. Evid. 404(b). We have located a myriad of federal cases in which prior convictions have "come in" or "have been admitted" pursuant to that rule. In *U.S. v. Burk*, 912 F.2d 225 (8th Cir. 1990), the defendant, charged with impeding the official duties of an Internal Revenue Service officer, objected to introduction, pursuant to rule 404(b), of evidence that he had pled guilty to a peace disturbance misdemeanor several years earlier. In rejecting that argument, the Eighth Circuit Court of Appeals held that introduction of the conviction itself was not only appropriate, it was in fact less prejudicial than evidence of the underlying bad acts themselves would have been. "[T]he bare bones manner in which the evidence was presented to the jury—the prosecution elicited only the actual fact of conviction and not the facts of the incident—acted as a safeguard against unfair prejudice." 912 F.2d at 229. In *United States v. Smith*, 605 F.2d 839 (5th Cir. 1979), the defendant argued that it was error to permit the government to introduce evidence of his prior guilty plea to a charge of prison escape. The Fifth Circuit Court of Appeals disagreed, noting that rule 404(b) "permit[s] the use of *prior conviction evidence* to demonstrate 'motive, opportunity, intent, preparation, plan, knowledge, identify [sic], or absence of mistake or accident.' " 605 F.2d at 845. (Emphasis supplied.) See,

also, *U.S. v. Prewitt*, 34 F.3d 436, 439-40 (7th Cir. 1994) ("[p]ursuant to proffer and balancing the district court admitted defendant Prewitt's two prior *convictions* of mail fraud to prove intent, knowledge and plan. The jury was provided a limiting instruction upon its admission" (emphasis supplied)).

In the instant case, too, the relevance of the evidence regarding Dreimanis' prior bad act with Mary was balanced by the district court against its potential prejudicial value, and the jury was provided with an appropriate limiting instruction. Introduction of the fact of Dreimanis' conviction for that act, under these circumstances, was not error.

Finally, we note that the argument regarding the prejudicial impact of conviction evidence was neither assigned as error nor briefed by Dreimanis. "To be considered by an appellate court, [a claimed prejudicial] error must be assigned and discussed in the brief of one claiming that prejudicial error has occurred." *Lange v. Crouse Cartage Co.*, 253 Neb. 718, 723, 572 N.W.2d 351, 354 (1998). Of course, an appellate court may, at its option, notice plain error. *Fiscel v. Beach*, 254 Neb. 678, 578 N.W.2d 52 (1998). Plain error exists where there is error, plainly evident from the record but not complained of at trial, which prejudicially affects a substantial right of a litigant and is of such a nature that to leave it uncorrected would cause a miscarriage of justice or result in damage to the integrity, reputation, and fairness of the judicial process. *Id.* Because, as explained above, introduction of evidence of Dreimanis' prior conviction as a part of admissible prior bad acts evidence did not prejudicially affect a substantial right of Dreimanis, it was not plain error. This argument is accordingly rejected.

## CONCLUSION

For the reasons set forth above, the decision of the district court for Lancaster County is affirmed in all respects.

AFFIRMED.