**622**

**UNITED STATES of America ex rel.**
**Nathaniel WATSON**

v.

**Joseph F. MAZURKIEWICZ.**

No. 70–1424.

United States District Court,
E. D. Pennsylvania.

May 11, 1971.

Stewart Dalzell, court-appointed, Philadelphia, Pa., for relator.

Arlen Specter, Dist. Atty., T. Michael Mather, Asst. Dist. Atty., Philadelphia, Pa., for respondent.

## OPINION

JOSEPH S. LORD, III, District Judge.

The seeds of this case were sown in 1964. An incident in January of that year led to relator's indictment under Bills 1328 (possession of narcotic drugs), 1329 (use of narcotic drugs), and 1330 (assault and battery and resisting arrest) [January Sessions]. An incident in August led to relator's indictment under Bill No. 1136 (possession of narcotic drugs) [September Sessions]. A November incident led to relator's indictment on Bills No. 1968 (possession of a firearm after commission of a crime of violence) and 1969 (possession of narcotic drugs) [November Sessions]. On May 24, 1965, the relator, who appeared with his counsel, pleaded guilty to all charges. Thereafter he was sentenced to two to ten years on Bill No. 1328, a consecutive sentence of one to five years on Bill No. 1969,

and a concurrent sentence of one to five years on Bill No. 1136. Sentence was suspended on all other charges.

Relator now attacks the validity of his guilty pleas. He has exhausted his state remedies on this issue.

A plea of guilty entered with advice of counsel is presumptively valid, and the burden is on the habeas petitioner to show that his plea was not knowingly and voluntarily made. United States ex rel. Sadler v. Commonwealth of Pennsylvania, 434 F.2d 997, 999 (C.A.3, 1970); United States ex rel. Grays v. Rundle, 428 F.2d 1401 (C.A.3, 1970). Whatever record was made at the time of the entry of the pleas in 1965 is now unavailable.[1] Hence, we turn to the transcripts of the preliminary hearing of November 13, 1964, the Pennsylvania Post Conviction Hearing Act hearing of March 18, 1969, and the hearing held in this court on November 30, 1970, in order to find the facts relevant to this case. These materials will reflect whether or not relator has sustained his burden of proof.[2]

On the morning of January 10, 1964, two Philadelphia narcotics agents, acting pursuant to a search warrant, searched relator's home. They found heroin in a number of places in the apartment, and proceeded to arrest relator, who was later released on bail (N.T.H.C. 15–18).[3]

---

1. Relator's pleas were entered in 1965, before the decision of Boykin v. Alabama, 395 U.S. 238, 89 S.Ct. 1709, 23 L.Ed. 2d 274 (1969), which requires the record to disclose that a plea of guilty was knowingly and voluntarily made and establishes a prophylactic per se rule invalidating the plea if the record is silent. Under Third Circuit decisions Boykin is prospective only, United States ex rel. Wiggins v. Pennsylvania, 430 F.2d 650 (C.A.3, 1970); United States ex rel. Fear v. Pennsylvania, 423 F.2d 55 (C.A. 3, 1970); United States ex rel. Hughes v. Rundle, 419 F.2d 116 (C.A.3, 1969), and hence inapplicable to this case.

2. We think it is only fair to note that finding facts on the basis of the materials before us is a difficult task. On

the one hand, the lawyer involved remembers little about his representation of relator, and could only testify, in large part, as to his customary procedures in advising guilty pleas. Such testimony may be to some extent probative that he followed such procedures in this particular case. Commonwealth v. Waters, 441 Pa. 511, 516, 273 A.2d 329 (1971). On the other hand, relator's memory serves him better—but his credibility is affected by the passage of time and his strong self-interest.

3. "N.T.H.C." refers to the notes of testimony of the hearing held in this court on November 30, 1970.

"N.T.P.H." refers to the notes of testimony of the preliminary hearing held in the state court.

The affidavit of "probable cause" for the search warrant read as follows:

> "Information from a reliable informant who has been used in the past in making many arrests in the Illicit Narcotic Traffic[.]"

On August 14, 1964, the same two agents, again acting pursuant to a search warrant, searched relator's apartment. They found relator about to administer heroin to himself and arrested him (N.T.H.C. 29). He was later released on bail. The affidavit of probable cause for this search warrant read as follows:

> "The above-named Police Officer has received information from an informant of known reliability, that person named on the warrant illegally possesses narcotics in his residence. The informant has given this officer within the past year information which has led to approximately fifteen arrests."

One evening in November, 1964, two Philadelphia police officers heard a call over their radio that in a certain area there was

> "[o]ne colored man, approximately 25 years of age, with a blue topcoat and a gray hat carrying a gun." (N.T.P. H. 5).

These officers went to the area in question and stopped three or four persons who answered this description before they saw relator (N.T.P.H. 6). They saw the relator, who answered the radio description, entering the rear seat of a cab, and saw that a companion was about to join him therein (N.T.P.H. 7). Officer Steele approached the cab in which Watson was seated, opened the door and told Watson to get out. At this point the officer first noted that Watson was attempting to hide a pistol under the seat (N.T.P.H. 9). Relator was then arrested for violation of the Uniform Firearm's Act. He was searched and nothing was found on him. He was taken to police headquarters where he was again searched and thirteen bags of heroin were found in his topcoat (N.T.P.H. 12).

In May or June of 1964 the relator retained counsel. He met with his lawyer at that time and discussed the circumstances of the January arrest (N.T.H.C. 50). The next time relator saw his lawyer was after he made bail on the September charges, and at that time the two talked for about an hour (N.T.H.C. 52, 53). Counsel and client next met on November 13, 1964, just before the preliminary hearing relating to the November arrest. They discussed the arrest for a short time, during which relator told counsel that the police had planted the narcotics on him.[4] Counsel then participated in the preliminary hearing on relator's behalf.

Relator next saw his lawyer at the arraignment in February of 1965, at which time the latter suggested pleas of guilty to all counts (N.T.H.C. 61). The lawyer advised his client that the police officers had the evidence on him (N.T. H.C. 62). At no time did he make relator aware of any potential challenges to the evidence (N.T.H.C. 63, 71). Counsel indicated that, if relator pled guilty, he might be hospitalized for treatment (N. T.H.C. 62, 63, 81). He never indicated what sentence, if any, relator might be given in the event he pled guilty (N.T. H.C. 81). He did indicate, however, that if Watson did not plead guilty he would probably get a considerable sentence (N.T.H.C. 72, 89, 92, 93).

Why were the pleas entered in this case? We deal here with a defendant

---

4. The police testified at the preliminary hearing that the narcotics were not planted on relator (N.T.P.H. 12). Relator's counsel therefore concluded that it would be hard to get a jury to believe the goods were planted (N.T.H.C. 94). Further, he felt that controverting the testimony of a police officer would perhaps result in an increase in the sentence eventually imposed (N.T.H.C. 95).

Counsel's judgment that a plea was warranted despite this defense does seem unimpeachable. However, we need not decide this issue since relator has not raised it.

who deems the evidence seized by the police crucial to the case against him. Further, Watson did not have his own reasons for pleading guilty. He was advised that the police "had the goods on him" (N.T.H.C. 65). Though he sensed that the third arrest had been illegal because it was warrantless and because narcotics had allegedly been planted on him, he decided that counsel's assessment of the strength of the government's case was probably more valid than his own untutored judgment. Hence, relator proceeded to plead guilty to all charges

" * * * to save himself the expense and agony of a trial and perhaps also to minimize the penalty which might be imposed." McMann v. Richardson, 397 U.S. 759, 767, 768, 90 S.Ct. 1441, 1447, 25 L.Ed.2d 763 (1970).

■ Guilty pleas are "grave and solemn" acts which waive certain constitutional rights, and they therefore must be " * * * knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." Brady v. United States, 397 U.S. 742, 748, 90 S.Ct. 1463, 1469, 25 L. Ed.2d 747 (1970). It is part of a lawyer's obligation to prepare his client to enter a knowing, intelligent plea. Relator contends that his counsel's advice to plead guilty because of the strength of the government's case was so erroneous as not to be "within the range of competence demanded of attorneys in criminal cases," and that his pleas therefore are unintelligent and voidable acts under McMann v. Richardson, 397 U.S. 759, 90 S.Ct. 1441 (1970).

In *McMann* the Court faced the issue of whether or not an allegedly coerced confession invalidated a guilty plea entered on advice of counsel. The Court hypothesized that, if the defendant fore-saw that the confession would probably be admitted as evidence, he would thereby have been convinced that it would be most advantageous to enter a plea. A plea entered in such circumstances would be a voluntary act. And it would also be an intelligent act, unless it could be shown " * * * that the defendant's attorney was incompetent or ineffective when he thought the admissibility of the confession sufficiently probable to advise a plea of guilty." 397 U.S. at 770, 90 S.Ct. at 1448. Hence, the issue herein is whether a counsel exercising the "customary skill and knowledge" prevailing in Philadelphia in 1964 [5] might have thought the admissibility of the disputed evidence sufficiently likely to advise pleas on all counts.

A decision to plead guilty represents a choice among the alternative courses of action open to a defendant. North Carolina v. Alford, 400 U.S. 25, 31, 91 S.Ct. 160, 27 L.Ed.2d 162 (1970). Here, there were three alternatives: pleading guilty, going to trial, or filing a pre-trial motion to suppress evidence crucial to the government's case.[6] Pursuing a motion to suppress would have involved only limited expense and agony, and would have left relator free to plead guilty if his Fourth Amendment claims failed. There is no evidence of plea bargaining here, no evidence that relator got anything in return for the foregoing of his suppression motions. *Compare* Chambers v. Beto, 428 F.2d 791 (C.A.5, 1970). And we do not consider it a reasonable expectation that a judge would give a longer sentence after entrance of a plea just because a motion to suppress had earlier been argued. We decide that any normally competent attorney would be aware of the availability of a motion to suppress. Further, we decide that, in a case such as this,[7] any normally compe-

---

5. " * * * the standard of adequacy of legal services as in other professions is the exercise of the customary skill and knowledge which normally prevails at the time and place." Moore v. United States, 432 F.2d 730, 736 (C.A.3, 1970) (footnotes omitted).

6. Pa.R.Crim.P. 2000, 2001. *See generally* Commonwealth v. DeMichel, 214 Pa.Super. 392, 257 A.2d 608 (1969).

7. In cases where the defendant receives a *quid pro quo* for foregoing a motion to suppress, it might well be reasonable

tent attorney would advise that such a motion be filed if he were aware that the Fourth Amendment claims would probably succeed or present a close question [8] to the trial court.[9]

Counsel here told his client that the police had the goods on him. He obviously did not think that claims premised on Fourth Amendment violations would succeed. He therefore advised pleas of guilty and, by that very act, he advised against the filing of a motion to suppress. Might a competent counsel have felt that relator's Fourth Amendment claims would neither succeed nor present a close case in the trial court?

■ As to the first search, relator contends that the affidavit of probable cause was so clearly defective, and that the relevant case law was of such high visibility, that there was, and that any competent counsel would have to have realized that there was, a close legal issue. The affidavit would clearly have been defective under the standards set out in Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1968). *Aguilar*, however, was decided after the January search and was not retroactive in its application. Relator therefore hitches his argument to pre-*Aguilar* cases such as Jones v. United States, 362 U.S. 257, 80 S.Ct. 725, 4 L.Ed.2d 697 (1960), Nathanson v. United States, 290 U.S. 41, 54 S.Ct. 11, 78 L.Ed. 159 (1933), and Draper v. United States, 358 U.S. 307, 79 S.Ct. 329, 3 L.Ed.2d 327 (1959). We are unable to find that an argument based on such cases is sufficiently strong so that an attorney of normal competence would have realized that at least a close case was presented.

■ The second search, however, occurred in a different legal context. *Aguilar* had been decided two months before the search and eleven months before the plea of guilty was advised. The affidavit supporting the warrant seems patently defective under *Aguilar*, and we decide that a competent attorney would have realized that a Fourth Amendment claim existed and presented at least a close case. Consequently, we decide that relator received ineffective assistance of counsel as to the entry of the plea on Bill No. 1136.

■ Relator argues that the November arrest was faulty, and that the fruits of it were therefore excludible under Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Counsel reasonably could have entertained serious doubts about the privacy one can expect in a taxicab. Further, counsel could very reasonably have expected that the court would decide that the police had sufficient information to conclude that the defendant was armed and dangerous. *See* Commonwealth v. Berrios, 437 Pa. 338, 263 A.2d 342 (1970). We decide, therefore, that counsel could reasonably have decided that the Fourth Amendment claim did not even present a close case.

Finally, relator argues that the probability of *ultimate* success in the appel-

---

for counsel to advise that pleas be entered even where claims that present at least close questions exist. However, there might well be questions, in such a case, of counsel's obligation to advise his client of the existence of such claims, their chance of success and the availability of a motion to suppress.

8. By "close cases" we refer to those cases in which sizeable numbers of attorneys would differ as to the expected outcome.

9. Filing a motion to suppress that stands a good chance of initial success, or having that motion granted by the trial court, may re-arrange the entire scenario. It may, for one thing, induce the government to engage in plea bargaining. Thus, our focus is now on what might have happened in the trial court, not whether, in our eyes, the Fourth Amendment claim should prevail under constitutional strictures. That these two things are not necessarily the same was recognized in *McMann*:

"* * * Courts [and judges] continue to have serious differences among themselves on the admissibility of evidence, both with respect to the proper standard by which the facts are to be judged and with respect to the application of that standard to particular facts. * * *" 397 U.S. at 770, 90 S.Ct. at 1448.

late courts on his Fourth Amendment claims was sufficiently great so that the advice to plead guilty to Bills Nos. 1328 and 1969 was incompetent. Our earlier discussion of the legal status of these searches is relevant in this regard, and it refutes the contention that the advice to plead guilty to these bills was incompetent.

## ORDER

And now, this 11th day of May 1971, it is ordered as follows:

(1) The writ of habeas corpus is granted as to Bill of Indictment No. 1136, September Sessions, 1964.

(2) In all other respects, the writ is denied.

There is probable cause for appeal.