STATE OF NEBRASKA, APPELLEE, V.
THOMAS J. SILVERS, APPELLANT.
587 N.W. 2d 325

Filed December 4, 1998.    No. S-98-126.

Thomas J. Silvers, pro se.

Don Stenberg, Attorney General, and Mark D. Starr for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, MCCORMACK, and MILLER-LERMAN, JJ.

STEPHAN, J.

In 1986, following a fire at his home that caused the death of his stepdaughter, Thomas J. Silvers pled guilty to first degree arson and first degree felony murder and is currently serving sentences for those convictions. In this action filed in the district court for Buffalo County, Silvers sought postconviction relief on two theories: (1) The arson conviction violated double jeopardy because arson is an underlying felony of first degree felony murder and (2) he was denied effective assistance of counsel because his attorney failed to file a motion to suppress evidence seized by fire and police officials without warrants at various times after the fire and failed to inform him of the viability of such a motion. The district court allowed the State 30 days to show cause or request a hearing as to why the court should not summarily dismiss the arson conviction based upon

a violation of double jeopardy. However, the court denied Silvers' request for relief regarding the felony murder conviction on the basis that Silvers' pleadings did not allege sufficient facts to justify an evidentiary hearing. We conclude that Silvers' pro se motion alleges sufficient facts to state a claim for postconviction relief and that it cannot be determined from the files and records before us that he is not entitled to such relief. Accordingly, we reverse, and remand with directions that Silvers be granted an evidentiary hearing with the assistance of appointed counsel.

## FACTUAL ALLEGATIONS

In his motion for postconviction relief filed in January 1998, Silvers alleges that a fire broke out at his home in Kearney, Nebraska, on May 3, 1986, and that his stepdaughter, Sheila Heard, died on May 11 as a result of extensive burns she suffered in the fire. Silvers alleges that he was arrested by Kearney police on May 6 and that he was eventually charged with first degree felony murder and first degree arson. Shortly after his arrest, Silvers retained an attorney to represent him. After initially pleading not guilty to both charges, Silvers changed his pleas to guilty and was convicted and sentenced to life imprisonment for felony murder and a consecutive term of 5 to 10 years' imprisonment for arson. In his brief, Silvers asserts that his guilty pleas were not entered pursuant to any plea agreement.

Silvers alleges that the alarm which summoned the Kearney Fire Department to his home was turned in at 1:23 a.m. on May 3, 1986, and that firefighters arrived a short time later and extinguished the fire within approximately 5 to 6 minutes of their arrival. He alleges that the fire was confined to a bedroom area and that investigators were able to enter the home and examine the scene shortly after the fire had been extinguished.

Silvers alleges that after determining the point of the fire's origin, investigators contacted Gary Nelson, a deputy State Fire Marshal, who arrived at the scene at 1:48 a.m. Silvers alleges that based on Nelson's experience and the observance of certain burn patterns, Nelson determined that the fire had been intentionally set. Silvers further alleges that a Detective Dreyer of

the Kearney Police Department was then contacted and requested to photograph the area of the home where the arson was believed to have occurred. Silvers states that firefighters departed the scene at 2:25 a.m., leaving only a guard outside the home, and that Dreyer left at 3 a.m, leaving no police officials either inside or outside of the home.

Silvers alleges that while Dreyer was investigating the fire scene, Nelson went to the hospital where Heard was being treated for extensive burns she received in the fire. Upon detecting a strong odor of gasoline on her clothing, he seized it as evidence. Silvers alleges that several meetings and telephone calls occurred during which various investigators and a senior deputy State Fire Marshal concluded the fire was caused by arson and that a call was made requesting assistance from the Nebraska State Patrol.

According to Silvers' motion, beginning at 6:30 a.m. on May 3, 1986, two deputy State Fire Marshals and a detective with the sheriff's office began searching his home for the sole purpose of gathering evidence. He alleges that a mobile crime unit from the Nebraska State Patrol arrived at 7:30 a.m. and also began to participate in the search. Silvers alleges that the searches were carried out in the absence of any exigent circumstances, that they were not accomplished pursuant to either an administrative warrant or a search warrant, and that 17 items of evidence which had not been discovered during the initial investigation were removed from his home. Silvers states that the evidence seized was then used to "coerce" him and his wife to consent to further searches of his home, which resulted in the seizure of 18 more items of evidence. Silvers further alleges that in mid-July, another warrantless and nonconsensual search occurred, which resulted in the seizure of a barbell.

Silvers alleges in his motion that his attorney never advised him of the illegality of the searches, did not file a motion to suppress evidence seized during the searches, and failed to advise him of the true strength of his case had the evidence been suppressed. Silvers further alleges that his attorney did not provide him with documents concerning the searches and did not allow him to review any of his discovery files. Silvers asserts that he would not have entered pleas of guilty if his attorney had

advised him of the viability of a motion to suppress and that his guilty pleas were therefore not intelligently made due to ineffective assistance of counsel.

## FILES AND RECORDS

The record before us does not include a transcript or bill of exceptions from the 1986 criminal proceedings which resulted in Silvers' convictions. Other than the transcript of the postconviction proceeding, the only files and records presented are those contained in a presentence investigation file compiled during the original prosecution. This file contains a copy of a journal entry entered on August 29, 1986, which reflects the entry and acceptance of Silvers' plea of guilty to the charge of first degree arson, as well as various statements and investigative reports. Silvers refers to the presentence investigation file in his motion for postconviction relief, alleging that it supports the factual allegations upon which he bases his claim for postconviction relief.

## PROCEDURAL BACKGROUND

Upon review of Silvers' motion for postconviction relief, the district court entered an order filed January 23, 1998, in which it allowed the State 30 days to show cause or request a hearing as to why the court should not summarily dismiss the arson conviction based upon a violation of double jeopardy. In the same order, the district court denied Silvers' requested relief regarding his felony murder conviction based upon a finding that he had not alleged sufficient facts to warrant an evidentiary hearing or appointment of counsel. The record does not reflect whether the State responded to the show cause order pertaining to the arson conviction, and its time for doing so had not expired when Silvers perfected this appeal on February 9. Although Silvers filed his appellate briefs pro se, he was represented by counsel at oral argument.

## ASSIGNMENTS OF ERROR

Silvers assigns that the district court erred in (1) failing to find a violation of Silvers' Fourth Amendment right to be free from unreasonable searches and seizures, (2) finding that Silvers had received effective assistance of counsel, (3) failing

to grant an evidentiary hearing, and (4) failing to appoint counsel.

## STANDARD OF REVIEW

A defendant requesting postconviction relief must establish the basis for such relief, and the findings of the district court will not be disturbed unless they are clearly erroneous. *State v. Dandridge, ante* p. 364, 585 N.W.2d 433 (1998).

## ANALYSIS

### JURISDICTION

Because the district court left the issue of double jeopardy open to further proceedings and Silvers filed his appeal during that timeframe, we must first consider whether there is a final, appealable order. Before reaching the legal issues presented for review, it is the duty of an appellate court to determine whether it has jurisdiction over the matter before it. *Fitzke v. City of Hastings, ante* p. 46, 582 N.W.2d 301 (1998); *Olsen v. Olsen,* 254 Neb. 293, 575 N.W.2d 874 (1998). The three types of final orders which may be reviewed on appeal under the provisions of Neb. Rev. Stat. § 25-1902 (Reissue 1995) are (1) an order which affects a substantial right in an action and which in effect determines the action and prevents a judgment, (2) an order affecting a substantial right made during a special proceeding, and (3) an order affecting a substantial right made on summary application in an action after a judgment is rendered. *O'Connor v. Kaufman, ante* p. 120, 582 N.W.2d 350 (1998); *State v. Kula,* 254 Neb. 962, 579 N.W.2d 541 (1998); *SID No. 1 v. Nebraska Pub. Power Dist.,* 253 Neb. 917, 573 N.W.2d 460 (1998). While the order from which Silvers appeals clearly affected a substantial right, namely, his claim that his conviction for felony murder is void because of ineffective assistance of counsel, it does not fall within the first or third above-listed categories established by § 25-1902, and we must therefore determine whether it was made during a special proceeding so as to be appealable under § 25-1902.

Special proceedings entail civil statutory remedies not encompassed in chapter 25 of the Nebraska Revised Statutes. *SID No. 1 v. Nebraska Pub. Power Dist., supra.* Special pro-

ceedings have also been described as "every special statutory remedy which is not in itself an action." *State v. Gibbs*, 253 Neb. 241, 245, 570 N.W.2d 326, 329 (1997).

Although we have never specifically addressed the issue of whether postconviction actions constitute special proceedings, we have held that various proceedings under Chapter 29 of the Nebraska Revised Statutes constitute special proceedings affecting substantial rights. See, *State v. Gibbs, supra* (order overruling motion for discharge based on violation of speedy trial provisions of Neb. Rev. Stat. § 29-1207 (Reissue 1995)); *State v. Kula, supra* (reaffirming holding in *State v. Gibbs, supra*); *State v. Guatney*, 207 Neb. 501, 299 N.W.2d 538 (1980) (order issued pursuant to procedures under chapter 29 finding defendant not competent to stand trial); *In re Application of Tail, Tail v. Olson*, 144 Neb. 820, 14 N.W.2d 840 (1944) (application for writ of habeas corpus). Further indication that a postconviction action should be considered a "special proceeding" within the context of § 25-1902 lies in the fact that a postconviction action is a civil statutory remedy which is not encompassed in chapter 25. See Neb. Rev. Stat. § 29-3001 (Reissue 1995) (stating that postconviction proceedings "shall be civil in nature"). We therefore conclude that the order of the district court is appealable under § 25-1902.

POSTCONVICTION PROCEDURE

The Nebraska Postconviction Act provides in part:

A prisoner in custody under sentence and claiming a right to be released on the ground that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States, may file a verified motion at any time in the court which imposed such sentence, stating the grounds relied upon, and asking the court to vacate or set aside the sentence.

Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney [and] grant a prompt hearing thereon . . . .

§ 29-3001. An evidentiary hearing on a motion for postconviction relief is required on an appropriate motion containing factual allegations which, if proved, constitute an infringement of the movant's rights under the state or federal Constitution. *State v. Dandridge, ante* p. 364, 585 N.W.2d 433 (1998); *State v. Parmar*, 249 Neb. 462, 544 N.W.2d 102 (1996). However, an evidentiary hearing is not required when a motion for postconviction relief alleges only conclusions of fact or law. *State v. Jones*, 254 Neb. 212, 575 N.W.2d 156 (1998); *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997); *State v. Lyman*, 241 Neb. 911, 492 N.W.2d 16 (1992). Also, an evidentiary hearing may be denied on a motion for postconviction relief when the records and files affirmatively show that the defendant is entitled to no relief. *State v. Dandridge, supra*; *State v. Parmar, supra*. Such files and records may include the presentence report. *State v. Rivers*, 226 Neb. 353, 411 N.W.2d 350 (1987). Thus, we have stated that an evidentiary hearing must be granted "when the facts alleged would justify relief, if true, or when a factual dispute arises as to whether a constitutional right is being denied." *State v. Lofquest*, 223 Neb. 87, 90, 388 N.W.2d 115, 117 (1986).

We pause here to note that in *State v. Jones*, 254 Neb. at 215, 575 N.W.2d at 159, we articulated the test for denying an evidentiary hearing on the basis of the files and records somewhat differently, stating that a court need not conduct an evidentiary hearing in a postconviction case when "notwithstanding proper pleadings of facts in a motion for postconviction relief, the files and records in the movant's case do not show a denial or violation of the movant's constitutional rights causing the judgment against the movant to be void or voidable." Accord *State v. Boppre, supra*. To the extent that this statement suggests that an evidentiary hearing on an adequately pled motion for postconviction relief is required only where the files and records *establish* entitlement to relief, it is disapproved. The plain language of § 29-3001 provides that an evidentiary hearing is required under such circumstances "[*u*]*nless* the motion and the files and records of the case show to the satisfaction of the court that the prisoner is *entitled to no relief* . . . ." (Emphasis supplied.) As we stated in *State v. Dandridge*, a motion for postconviction

relief may be denied "when the records and files affirmatively show that the defendant is entitled to no relief." *Ante* at 367, 585 N.W.2d at 435.

### INEFFECTIVE ASSISTANCE OF COUNSEL

Normally, a voluntary guilty plea waives all defenses to a criminal charge. *State v. Lyman, supra.* However, in a postconviction action brought by a defendant convicted on the basis of a guilty plea, a court will consider an allegation that the plea was the result of ineffective assistance of counsel. *Id.* When a defendant in a postconviction motion alleges a violation of his or her constitutional right to effective assistance of counsel as a basis for relief, the standard for determining the propriety of the claim is whether the attorney, in representing the accused, performed at least as well as a lawyer with ordinary training and skill in the criminal law in the area. *State v. Russell*, 248 Neb. 723, 539 N.W.2d 8 (1995). Further, the defendant must make a showing of how the defendant was prejudiced in the defense of his or her case as a result of his or her attorney's actions or inactions. *State v. Russell, supra*; *State v. Escamilla*, 245 Neb. 13, 511 N.W.2d 58 (1994). When a conviction is based upon a guilty plea, the prejudice requirement is satisfied if the defendant shows a reasonable probability that but for the errors of counsel, the defendant would have insisted on going to trial rather than pleading guilty. *State v. Lyman, supra.* The entire ineffectiveness analysis is viewed with a strong presumption that counsel's actions were reasonable and that even if found unreasonable, the error justifies setting aside the judgment only if there was prejudice. *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984); *State v. Lyman, supra.*

Silvers' ineffective assistance of counsel claim centers upon his allegation that his attorney did not adequately assert and advise him of his Fourth Amendment rights pertaining to evidence seized from his home after the fire. The U.S. Supreme Court has set out three factors that govern the constitutionality of warrantless and nonconsensual entries onto premises that are damaged by fire:

> whether there are legitimate privacy interests in the fire-damaged property that are protected by the Fourth

Amendment; whether exigent circumstances justify the government intrusion regardless of any reasonable expectations of privacy; and, whether the object of the search is to determine the cause of the fire or to gather evidence of criminal activity.

*Michigan v. Clifford*, 464 U.S. 287, 292, 104 S. Ct. 641, 78 L. Ed. 2d 477 (1984). If reasonable privacy interests remain in the property damaged by fire, in the absence of consent, any official entry must be made pursuant to a warrant or pursuant to exigent circumstances. *Id.*

A burning building creates an exigency that justifies the warrantless entry of fire officials to fight the blaze. *Id.* In addition, once fire officials are in the building, they may remain there without a warrant "for a reasonable time" to ensure that the fire will not reignite and to investigate the cause of the fire after it has been extinguished. 464 U.S. at 293. See, also, *Michigan v. Tyler*, 436 U.S. 499, 98 S. Ct. 1942, 56 L. Ed. 2d 486 (1978). During this time, warrantless seizures of evidence found in plain view while inspecting the premises are also constitutional. *Michigan v. Tyler, supra.* However, when reasonable expectations of privacy exist, additional investigations after the fire has been extinguished and officials have left the scene must be made pursuant to a warrant or a new exigency. *Id.*

What constitutes a "reasonable time" depends upon the circumstances of the case. The U.S. Supreme Court has held that when officials could not remain in a building following a fire to investigate its cause due to darkness and smoke, a search that occurred after the officials left the scene and returned during daylight was a continuation of the initial search and did not require a warrant. *Michigan v. Tyler, supra.* See, also, *U.S. v. Veltmann*, 869 F. Supp. 929 (M.D. Fla. 1994), *aff'd* 87 F.3d 1329 (11th Cir. 1996) (delay justified due to darkness, smoke, and haze). However, the Court has also held that when officials left a private residence and returned after the owner had taken steps to secure the area, reentry without a warrant was impermissible. *Michigan v. Clifford, supra.*

When a warrant is necessary, the object of the search dictates the type of warrant required. *Id.* If the primary objective is to determine the cause of the fire, an administrative warrant will

suffice. *Id.* However, if the primary objective is to gather evidence of criminal activity, a criminal search warrant must be obtained upon a showing of probable cause. *Id.* See, also, *U.S. v. Veltmann, supra* (warrant required to seize evidence not in plain view when searching for evidence of criminal activity). Further, once investigators determine arson as the cause of a blaze, a search warrant must be obtained in order to gather evidence of criminal activity that was not seized in plain view during the initial search. *Michigan v. Clifford, supra*; *U.S. v. Veltmann, supra.* See, also, *Rose v. State*, 586 So. 2d 746, 754 (Miss. 1991) (once search has become "curiosity adventure" which might lead to evidence of criminal activity, warrant is necessary).

We conclude that Silvers alleged sufficient facts which, if proved to be true, would have formed the basis for a viable motion to suppress at least some of the evidence seized from his home after the fire based upon a violation of Silvers' rights under the Fourth Amendment. In particular, he has made specific factual allegations that warrantless searches and seizures occurred without his consent after the fire had been extinguished and its cause determined. He has further alleged that as of the date he entered his guilty plea, his attorney had not filed a motion to suppress on his behalf or advised him of his right to move for suppression of evidence which may have been unlawfully seized. Taken at face value, these alleged facts would be sufficient to satisfy the first part of the aforementioned test for ineffective assistance of counsel; i.e., performance below the standard expected of reasonable criminal defense counsel.

The question then becomes whether Silvers has alleged facts sufficient to satisfy the second part of the test, i.e., that he was prejudiced as the result of a deficiency in the performance of his attorney. The State argues that because, with the exception of a "barbell," Silvers' motion for postconviction relief does not identify the specific items of evidence alleged to have been unlawfully seized, there is no factual allegation sufficient to establish the element of prejudice. Although it is true that Silvers does not specifically identify the evidence which he contends should have been suppressed, he does allege that 35 items of evidence were seized during warrantless searches con-

ducted after the fire had been extinguished and its cause determined. He also alleges that his attorney did not provide him with reports or documents concerning these searches or permit him to review any discovery files and that his attorney did not advise him as to the viability of a motion to suppress and its potential impact on the strength of the prosecution's case prior to the time that he entered his guilty plea. "Guilty pleas are 'grave and solemn' acts which waive certain constitutional rights, and they therefore must be '* * * knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences.'" *United States ex rel. Watson v. Mazurkiewicz*, 326 F. Supp. 622, 625 (E.D. Pa. 1971), quoting *Brady v. United States*, 397 U.S. 742, 90 S. Ct. 1463, 25 L. Ed. 2d 747 (1970). A plea of guilty will be found to be freely and voluntarily entered upon the advice of counsel if that advice is within the range of competence demanded of attorneys in criminal cases. *State v. Escamilla*, 245 Neb. 13, 511 N.W.2d 58 (1994).

Certainly, competent criminal defense counsel would be expected to evaluate evidence seized from a defendant's residence by law enforcement personnel and advise the defendant regarding the probability of its suppression as a part of advising him whether or not to enter a guilty plea. One inference which can be drawn from Silvers' motion is that the evidence which he alleges to have been unlawfully seized was the only evidence of his guilt. If that were proved to be true, it could establish a reasonable probability that Silvers would have chosen to go to trial instead of pleading guilty, had the evidence been suppressed.

The question before us is not whether Silvers is entitled to postconviction relief, but whether an evidentiary hearing should be held to determine that question. Taken as a whole and considering that Silvers filed his motion pro se, we conclude that Silvers' allegations of ineffective assistance of counsel are sufficiently specific to require us to examine files and records to determine whether they affirmatively show that Silvers is not entitled to postconviction relief. See *State v. Russ,* 193 Neb. 308, 226 N.W.2d 775 (1975). In some postconviction cases involving claims that counsel was ineffective in failing to seek suppression of inadmissible evidence, we have concluded that

no evidentiary hearing was required because information contained in files and records showed that the movant was not entitled to relief. See, e.g., *State v. Dixon*, 237 Neb. 630, 467 N.W.2d 397 (1991) (suppression motion would have been unsuccessful under circumstances); *State v. Britt*, 237 Neb. 163, 465 N.W.2d 466 (1991) (objection to seized evidence would not have been successful); *State v. Apodaca*, 223 Neb. 258, 388 N.W.2d 837 (1986) (record showed that counsel raised Fourth Amendment issue that defendant alleged he was not informed of, and actually did file motion to suppress); *State v. Bartlett*, 199 Neb. 471, 259 N.W.2d 917 (1977) (hearing not required in absence of any grounds which would be source for counsel's challenge to search).

However, in *State v. Jackson*, 226 Neb. 857, 415 N.W.2d 465 (1987), we held that an evidentiary hearing was necessary based upon allegations that the defense counsel was ineffective in failing to file a motion to suppress evidence vital to the State's case and in failing to object to the evidence at trial on the basis that it had been unconstitutionally seized from the defendant at the time of his arrest. We wrote:

> The facts concerning the defendant's arrest, as shown by the files and records, are almost completely unknown to this court. Defendant's amended postconviction petition, while not as artful as it might be, is sufficient to raise the issue of the lawfulness of his arrest. Defendant alleges an illegal search. The files and records of the case do not show that "defendant is entitled to no relief." If defendant can establish his allegations, he might be entitled to relief.

226 Neb. at 862, 415 N.W.2d at 468.

We are unable to conclude from our review of Silvers' presentence investigation file that he is not entitled to postconviction relief. At least to some degree, the information contained in the file is consistent with the chronology of events alleged in Silvers' motion. One investigative memo makes reference to a search warrant, but neither its scope nor time of issuance is reflected, and a copy of the warrant itself is not contained in the file. Another investigative memo indicates that a consent to search was executed by Silvers and his wife at some time on May 3, 1986, but the consent form itself is not contained in the

file and there is no information upon which to evaluate Silvers' claim that the consent was "coerced" other than a statement taken from Silvers' wife on that date in which she stated that she did not understand the consent form she was being asked to sign. The file contains some indication that law enforcement personnel searched Silvers' home, took photographs, and seized certain evidence on the morning of May 3 without a warrant or consent and at a time when Silvers may have had a reasonable expectation of privacy in the premises. The file does not indicate any confession prior to the guilty plea, and we are unable to ascertain from its contents whether there was incriminating evidence other than that seized from his home. The file does not indicate whether a motion to suppress was filed or whether Silvers was counseled by his attorney on this issue before he entered his plea. Thus, we conclude that an evidentiary hearing is necessary to resolve Silvers' claim for postconviction relief and that the district court's determination to the contrary was clearly erroneous.

### APPOINTMENT OF COUNSEL

Silvers also assigns as error the failure of the district court to appoint counsel to represent him. Under the Nebraska Postconviction Act, it is within the discretion of the trial court as to whether counsel shall be appointed to represent the defendant. *State v. Boppre*, 252 Neb. 935, 567 N.W.2d 149 (1997). Where the assigned errors in the postconviction petition before the district court are either procedurally barred or without merit, establishing that the postconviction action contained no justiciable issue of law or fact, it is not an abuse of discretion to fail to appoint appellate counsel for an indigent defendant. *Id.* However, where the defendant's petition presents a justiciable issue to the district court for postconviction determination, an indigent defendant is entitled to the appointment of counsel. *Id.*

As previously discussed, Silvers' petition presents a justiciable issue for postconviction determination. Accordingly, it was an abuse of discretion for the district court to deny Silvers' request for the appointment of counsel. We reverse, and remand

with directions to appoint counsel for Silvers and conduct an evidentiary hearing on his motion for postconviction relief.

REVERSED AND REMANDED WITH DIRECTIONS.