STATE OF NEBRASKA, APPELLEE, V.
JACK E. HARRIS, APPELLANT.

677 N.W.2d 147

Filed April 9, 2004.   No. S-03-384.

James R. Mowbray and Jerry L. Soucie, of Nebraska Commission on Public Advocacy, for appellant.

Jon Bruning, Attorney General, and Kimberly A. Klein for appellee.

HENDRY, C.J., WRIGHT, CONNOLLY, GERRARD, STEPHAN, McCORMACK, and MILLER-LERMAN, JJ.

CONNOLLY, J.

Jack E. Harris appeals the district court's order denying him an evidentiary hearing on some of the issues he raised in a motion for postconviction relief. We determine that Harris is entitled to an evidentiary hearing regarding alleged prosecutorial misconduct concerning whether the prosecutor delivered a report to defense counsel. We also determine that Harris is entitled to a hearing about ineffective assistance of counsel concerning the report. We determine that he is not entitled to a hearing on the other issues raised. We affirm in part, and in part reverse and remand for further proceedings.

## I. BACKGROUND

Harris was convicted of first degree murder and use of a deadly weapon to commit a felony. We affirmed on appeal. *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002). The following facts were described in *Harris*:

During the summer of 1995, Harris sold a green convertible automobile to Anthony Jones, an Omaha drug dealer. During the same summer, Harris was allegedly introduced to Howard "Homicide" Hicks through a mutual acquaintance, Corey Bass. On August 23, 1995, Jones was found dead inside his apartment. The cause of death was a gunshot wound to the head.

In 1996, Harris was incarcerated in the Douglas County Correctional Facility. Lee Warren and Tony Bass, Corey Bass' brother, were also inmates of the Douglas County Correctional Facility at that time. On December 8, 1996, Corey Bass was murdered. Tony Bass assisted authorities in investigating Corey Bass'

murder. During that investigation, Tony Bass told police that while in jail, Harris told him that Harris had been involved in the murder of Jones. According to Tony Bass, Harris said that Jones had been murdered by Harris and someone named "Homicide."

In February 1997, police investigating Jones' murder spoke to Warren. Warren told police that Harris had spoken to him about Jones' murder and had told him that Jones was killed because he recognized Harris while Harris was robbing Jones.

In May 1997, police arrested Hicks for the murder of Jones. Hicks confessed and said that he and Harris had planned to rob Jones. Hicks said that Harris had killed Jones when Jones recognized Harris during the robbery.

Harris was charged with murder in the first degree and use of a deadly weapon to commit a felony. After Harris' first trial ended in a mistrial, Harris was retried. Tony Bass, Warren, and Hicks testified at trial substantially in accord with the statements described above, as did Robert Paylor, another witness who claimed that Harris told him about the murder of Jones.

During trial, Leland Cass, an Omaha police detective, testified about an interview between himself and Harris in which Harris identified Hicks by the nickname "Homicide." Thus, Cass' testimony provided direct statements from Harris showing that he knew Hicks. On cross-examination, Cass stated that the information came from a December 10, 1996, interview report that he prepared (Cass report).

Harris objected to Cass' testimony and moved for a mistrial, arguing that he was entitled to a hearing on whether his statements were voluntary. At a hearing outside the presence of the jury, Harris presented evidence that the statements were made after he was promised they would not be used against him as part of a proffer agreement with the federal government and that the prosecutor was aware of that fact. Harris' attorney, who was not under oath, stated that he had not seen the Cass report before trial. According to Harris, part of his defense was that Harris and Hicks did not know each other and that Hicks was making up the story.

In response, the prosecutor, who also was not under oath, stated that she received two boxes of police reports and had a law clerk forward copies to defense counsel. The law clerk who made the copies did not testify. The prosecutor stated that she

believed the Cass report had been given to the defense because she found it in a box that had been separated by the law clerk and copied.

The trial judge stated that he would not resolve a "he said, she said" discovery dispute. The court determined that Harris had not made a showing that he was not given the Cass report of December 10, 1996, and thus denied a hearing on whether the statements were voluntary because the motion was untimely. The court also disagreed with Harris' argument that his defense claimed that Hicks and Harris had never met.

Harris was convicted of murder in the first degree and use of a deadly weapon to commit a felony. He was sentenced to consecutive sentences of life imprisonment on the murder charge and 10 to 20 years' imprisonment on the weapons charge. Harris appealed, arguing in part that the district court erred by (1) failing to grant a hearing about whether the statements were voluntary, (2) failing to grant a mistrial for the prosecutor's violation of a discovery order, and (3) allowing evidence of other bad acts or crimes in violation on Neb. Rev. Stat. § 27-404(2) (Reissue 1995). Harris was represented by the same counsel at trial and on direct appeal.

On appeal, we determined that the court did not abuse its discretion in determining that Harris' motion for a hearing about his statement was untimely. In reaching this determination, we stated:

> The district court was confronted with essentially a "he said, she said" scenario, as the prosecutor stated that Cass' police report regarding the December 10, 1996, interview had been provided to the defense, while defense counsel claimed that the defense had not received the report. Given the record before us, we have no basis to find that the district court abused its discretion in concluding that Harris' showing of surprise was insufficient, particularly given the court's greater familiarity with the course of the proceedings.

> We are not in a position to question the veracity of either the prosecution or defense on their contradictory claims regarding the process of discovery. It is possible that the prosecution overlooked the police report of the December 10, 1996, interview and failed to provide it to the defense, and it is equally possible that the defense either misplaced or

failed to appreciate the significance of the report once it was received. Given the absence of dispositive proof, we cannot conclude that the district court abused its discretion.

*State v. Harris*, 263 Neb. 331, 337, 640 N.W.2d 24, 32 (2002).

Addressing the alleged discovery violation, we stated that assuming, without deciding, that the Cass report was within the scope of the discovery order, the court did not abuse its discretion when it determined that Harris failed to show that the Cass report was not provided to defense counsel. We also stated that Harris failed to seek a continuance to cure any prejudice caused by the belated disclosure of evidence.

Concerning evidence of prior bad acts, we held that Harris' counsel either failed to object or did not properly object. In each case, however, we also stated that had an objection been properly preserved, it would have been without merit. See *Harris, supra* (providing details of testimony).

## II. POSTCONVICTION MOTION

Harris moved for postconviction relief. The court granted an evidentiary hearing on some of the issues raised in the motion. The court did not grant a hearing, however, on the following allegations: (1) Harris' convictions were obtained as the result of prosecutorial misconduct in violation of the Due Process Clauses of the U.S. and Nebraska Constitutions; (2) his counsel was ineffective when he failed to file motions to suppress the December 10, 1996, statements, failed to review the Cass report if it was received, and failed to obtain a proper discovery order if it was not received; (3) his appellate counsel was ineffective by failing to raise issues of prosecutorial misconduct and ineffective assistance of counsel, and by representing him both at trial and on appeal; (4) his counsel was ineffective when he failed to properly object to improper testimony under § 27-404.

The district court found that prosecutorial misconduct was an issue that could have been properly raised on direct appeal and would not be considered on postconviction. The court next found that any issues concerning the Cass report, including any failure of appellate counsel to raise the issue of prosecutorial misconduct on appeal, had been determined on direct appeal. In the alternative, the court concluded that whether Harris knew Hicks' nickname

was innocuous and did not injure his defense. The court further determined that even if Harris' counsel had objected to testimony about prior bad acts, the objections would have been without merit. Finally, the court determined that Harris' counsel was not ineffective merely because the same counsel represented Harris both at trial and on appeal. Accordingly, the court denied an evidentiary hearing on those issues. The court granted a hearing on other issues raised in the postconviction motion. Harris appeals.

## III. ASSIGNMENTS OF ERROR

Harris assigns that the district court erred by denying an evidentiary hearing on (1) factual issues involving prosecutorial misconduct, (2) ineffective assistance of counsel for failure to properly move to suppress the Cass report and failure to properly object to inadmissible evidence, and (3) ineffective assistance of appellate counsel.

## IV. STANDARD OF REVIEW

■ A jurisdictional question that does not involve a factual dispute is determined by an appellate court as a matter of law, which requires the appellate court to reach a conclusion independent of the lower court's decision. *Rath v. City of Sutton, ante* p. 265, 673 N.W.2d 869 (2004).

■ Whether a claim raised in a postconviction proceeding is procedurally barred is a question of law. When reviewing a question of law, an appellate court reaches a conclusion independent of the lower court's ruling. *State v. Ortiz*, 266 Neb. 959, 670 N.W.2d 788 (2003).

## V. ANALYSIS

### 1. JURISDICTION

In his brief, Harris notes a jurisdictional issue involving whether an order granting an evidentiary hearing on some issues and denying a hearing on others is a final order in the light of Neb. Rev. Stat. § 25-1315 (Cum. Supp. 2002) (addressing multiple claims for relief and multiple parties). The State does not argue that jurisdiction is lacking.

■ Before reaching the legal issues presented for review, it is the duty of an appellate court to settle jurisdictional issues

presented by a case. *Pennfield Oil Co. v. Winstrom, ante* p. 288, 673 N.W.2d 558 (2004). Section § 25-1315 provides in part:

When more than one claim for relief is presented in an action, whether as a claim, counterclaim, cross-claim, or third-party claim, or when multiple parties are involved, the court may direct the entry of a final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay and upon an express direction for the entry of judgment. In the absence of such determination and direction, any order or other form of decision, however designated, which adjudicates fewer than all the claims or the rights and liabilities of fewer than all the parties shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties.

Section 25-1315 requires an express determination by the trial court that no just reason exists for delay and an express direction for the entry of judgment in order to create a final order for appeal when less than all claims have been decided. However, the adoption of § 25-1315 does not change the fact that an order in a special proceeding affecting a substantial right is also a final order that may be appealed. See, e.g., *Keef v. State,* 262 Neb. 622, 634 N.W.2d 751 (2001).

Before the enactment of § 25-1315, we held that an order granting an evidentiary hearing on some issues and denying a hearing on others was a final order because a postconviction proceeding is a special proceeding. *State v. Silvers,* 255 Neb. 702, 587 N.W.2d 325 (1998). The enactment of § 25-1315 does not change the conclusion reached in *Silvers.* Accordingly, we determine that we have jurisdiction over this appeal.

### 2. PROSECUTORIAL MISCONDUCT

Harris contends that the district court should have granted an evidentiary hearing on allegations of prosecutorial misconduct that he could not have raised on direct appeal. He contends that he was denied a fair trial because the prosecutor failed to deliver the Cass report to his defense counsel before trial, thus

preventing his counsel from raising issues about the admissibility of Harris' statements. Relying on *State v. Threet*, 231 Neb. 809, 438 N.W.2d 746 (1989), the State argues that prosecutorial misconduct must always be raised on direct appeal or it is waived. In the alternative, the State argues that the issues were addressed on direct appeal.

■ In a motion for postconviction relief, the defendant must allege facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. *State v. Lotter*, 266 Neb. 245, 664 N.W.2d 892 (2003). The appellant in a postconviction proceeding has the burden of alleging and proving that the claimed error is prejudicial. *State v. Dean*, 264 Neb. 42, 645 N.W.2d 528 (2002).

■ We have regularly held that a motion for postconviction relief cannot be used to secure review of issues which were known to the defendant and which were or could have been litigated on direct appeal. See, e.g., *State v. Ortiz*, 266 Neb. 959, 670 N.W.2d 788 (2003). However, when an issue has not been raised or ruled on at the trial level and the matter necessitates an evidentiary hearing, an appellate court will not address the matter on direct appeal. See *State v. Cody*, 248 Neb. 683, 539 N.W.2d 18 (1995).

In *Threet, supra*, it was alleged in a postconviction motion that a prosecutor's derogatory remarks during closing arguments resulted in prosecutorial misconduct. We concluded that the postconviction motion failed to set out facts and only alleged conclusions. We then additionally stated in dicta that "allegations of prosecutorial misconduct are proper subjects for a direct appeal, not a postconviction hearing, and in the absence of a direct appeal, the issue will not be considered in this hearing." *Id.* at 811-12, 438 N.W.2d at 748. We have held in other cases that an allegation of prosecutorial misconduct was barred in a postconviction action when the issues were known at the time of trial and were not raised on direct appeal. See, e.g., *Ortiz, supra*. We have also barred prosecutorial misconduct claims that were raised and rejected on direct appeal. See *State v. Caddy*, 262 Neb. 38, 628 N.W.2d 251 (2001).

■ In many, if not most instances, a claim of prosecutorial misconduct would appropriately be raised on direct appeal. For example, allegations such as those in *Threet* about a prosecutor's statements will be in the record providing the facts necessary for a determination on direct appeal. However, when a determination of misconduct would require an evidentiary hearing that could not be conducted during trial, a defendant cannot properly present the issue on direct appeal. In such a limited case, a defendant is entitled to an evidentiary hearing on the matter if he or she has alleged facts which, if proved, constitute a denial or violation of his or her rights under the U.S. or Nebraska Constitution, causing the judgment against the defendant to be void or voidable. To the extent *State v. Threet*, 231 Neb. 809, 438 N.W.2d 746 (1989), states otherwise, it is disapproved.

Here, although Harris did not specifically raise prosecutorial misconduct on direct appeal, we noted in *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002), that the record was insufficient to conclude the district court abused its discretion when it determined there was no violation of a discovery order. We specifically noted that the case involved a "he said, she said" situation. *Id.* at 337, 640 N.W.2d at 32. Most important, a full evidentiary hearing about prosecutorial misconduct would have been unworkable at the trial level because the attorneys involved could not act as sworn witnesses to provide the testimony necessary to determine the matter. See *State ex rel. NSBA v Neumeister*, 234 Neb. 47, 449 N.W.2d 17 (1989) (describing advocate-witness rule in Nebraska). Thus, Harris is not barred from raising prosecutorial misconduct on postconviction.

The State contends, however, that Harris has not shown how any failure of the prosecutor to deliver the Cass report resulted in prejudice to his defense. The State argues that any statement that Harris knew Hicks' nickname of "Homicide" was innocuous because Harris' defense was that he was not present at the shooting, and it made no difference if he knew who Hicks was. Harris, however, contends that part of his defense theory was that Hicks was lying and had never met Harris before the murder. Thus, he argues he was prejudiced by allowance of the Cass report and testimony into evidence.

The record contains some support for Harris' argument. The prevailing theory of Harris' case was that Hicks was lying. Although there was little focus on whether the two knew each other before the murder, on cross-examination of Hicks, Harris' attorney asked questions to indicate that Hicks did not know Harris at the time of the crime. For example, Harris' attorney asked whether anyone ever saw Hicks and Harris together and asked questions about a pager that one allegedly gave to the other. Hicks could not provide names of any people who ever saw him and Harris together and did not know the pager number. Harris' attorney also argued these points in closing. We conclude that Harris has alleged facts to support an allegation that he was prejudiced by any misconduct that occurred. We determine that Harris is entitled to an evidentiary hearing on the issue of prosecutorial misconduct. Whether any misconduct occurred or whether he was prejudiced by any misconduct is best determined at an evidentiary hearing.

### 3. Ineffective Assistance of Counsel

### (a) Cass Report

Harris contends that if the report was properly delivered, his counsel was ineffective for failing to timely request a hearing about whether Harris' statements were voluntary. In the alternative, he argues that if the report was not delivered, his counsel was ineffective because he failed to draft a proper discovery order. The district court did not grant a hearing because it determined that all issues about the Cass report had been addressed on direct appeal.

When a defendant was represented both at trial and on direct appeal by lawyers employed by the same office, the defendant's first opportunity to assert ineffective assistance of trial counsel is in a motion for postconviction relief. See *State v. Jones*, 264 Neb. 671, 650 N.W.2d 798 (2002).

Harris had the same attorney at trial and on direct appeal. Further, this court did not determine any ineffective assistance of counsel issues about the report on direct appeal. We conclude that Harris is entitled to an evidentiary hearing on the issue of ineffective assistance of counsel concerning the delivery of the Cass report.

### (b) Failure to Object to Testimony From Cass About Statements of Tony Bass

Harris argues that a hearing is needed to determine whether his counsel was ineffective when he did not object to hearsay evidence from Cass about statements from Tony Bass. Cass testified, without objection, that Bass told him that Harris said that Jones was bound, the location of the gunshot wound, the purpose of the crime, and other details of the murder. There was no objection. Tony Bass testified at trial and repeated the statements.

The court concluded that the statements were hearsay, but that the testimony was cumulative to Tony Bass' own testimony, and thus harmless. We agree and find Harris' arguments to be without merit. See *State v. Ildefonso*, 262 Neb. 672, 634 N.W.2d 252 (2001).

### (c) Failure to Object to Testimony From Cass About Statements of Harris

Harris argues that his counsel was ineffective for failing to object to hearsay evidence from Cass about statements made by Harris. The district court concluded that the first statement, involving a denial that Harris knew various people, was hearsay, but not prejudicial. Concerning the other statements, the court found either that Harris' attorney properly objected or that Cass was not repeating statements made by Hicks. Without deciding whether the statements were hearsay, we agree with the reasoning of the district court that the statements were not prejudicial. Accordingly we find Harris' argument on this issue to be without merit.

### (d) Failure to Object to Statements From Warren, Robert Sklenar, Tony Bass, and Paylor

Harris contends that he is entitled to an evidentiary hearing because (1) Warren stated without objection that for his personal safety, he would get to move to another state while on parole; (2) Robert Sklenar, an Omaha police detective, testified that he spoke to Harris about "this case and another case," and no § 27-404(2) objection was made; (3) Bass testified without objection that Harris told him about the murder and "other things" such as drug dealing by Bass; and (4) Paylor, who allegedly had been shot by Harris in the past, testified without proper objection that he met

with Harris so Harris could "let [Paylor] know" who had shot Paylor.

On direct appeal, we determined that even if a proper objection would have been made to the testimony, no basis exists for reversal on each of the above issues. We apply the same reasoning and conclude that Harris is not entitled to an evidentiary hearing on this issue. See *State v. Harris*, 263 Neb. 331, 640 N.W.2d 24 (2002).

### 4. Ineffective Assistance of Counsel on Direct Appeal

Harris argues that his appellate counsel was ineffective in failing to raise issues of prosecutorial misconduct on direct appeal and had a conflict of interest in serving as both trial and appellate counsel. Harris will receive an evidentiary hearing on the issue of prosecutorial misconduct. We find no merit in Harris' argument about a conflict of interest and determine, as we did on direct appeal, that arguments about a failure to object to statements lack merit. We determine that this assignment of error is without merit.

## VI. CONCLUSION

We determine that Harris is entitled to an evidentiary hearing on issues about prosecutorial misconduct concerning delivery of the Cass report. He is also entitled to a hearing about ineffective assistance of counsel concerning the report. We determine that he is not entitled to a hearing on the other issues raised.

AFFIRMED IN PART, AND IN PART REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.